### The First National Bank of Litchfield, Illinois, Appellant, v. S. H. Cox, et al., Appellees.

1. CORPORATIONS—*statute prohibiting unauthorized assumption of corporate name construed.* A promissory note taken in a corporate name is not void merely because the assumption of such corporate name is unauthorized and in violation of statute.

2. NEGOTIABLE INSTRUMENTS—*rights of assignee before maturity.*
A person who takes an assignment of a promissory note before
due in good faith, for a valuable consideration, even though he may
be guilty of gross negligence, will hold it by a title valid against
the world, and it will not in his hands be subject to a defense of
failure of consideration.

Assumpsit. Appeal from the Circuit Court of Alexander county;
the Hon. WILLIAM N. BUTLER, Judge, presiding. Heard in this court
at the August term, 1907. Reversed and remanded. Opinion filed
March 18, 1908.

MILES FREDERICK GILBERT, for appellant; AMOS
MILLER, of counsel.

LANSDEN & LEEK, for appellees.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion
of the court.

This is a suit in *assumpsit* by appellant against ap-
pellees on a promissory note, dated March 10, 1903,
due July 1, 1904, payable to the order of The Telling
& Whitehead Co. for the sum of $833, at First State
Bank of Thebes, with interest payable annually at
the rate of six per cent. per annum. The note had a
credit dated March 14, 1903, of $100 and bore the fol-
lowing indorsements: "Pay to the Bank of Broad-
lands or order, without recourse on us, The Telling
& Whitehead Co." "Pay to the order of First Na-
tional Bank of Litchfield, Ill. without recourse on us.
Bank of Broadlands. Geo. W. Telling, cas."

The circumstances under which this note was given
appear from the evidence to be about as follows: In
the spring of 1903 one W. C. Woods appeared in the
neighborhood where appellees lived in Alexander
county, Illinois, having with him a stallion which he
was trying to sell. The plan used by him in selling
the horse was to organize a stock company with a
capital stock of $2,500, the proposed price of the horse,
the shares of which were to be $100 each. It was
proposed that the purchasers give notes for the amount

of $2,500, and that each signer of the notes should have one share of the stock for each $100 he was to pay upon the note. Woods professed to represent The Telling & Whitehead Co. and gave out cards with that name upon them. He succeeded in interesting appellees, who were farmers, in the matter and they signed three promissory notes amounting in all to the price asked for the horse, and the horse was turned over to Frank J. Zoellner, one of the signers of the notes. At the time the notes were signed, each of appellees received a certificate for one share of stock of $100 face value "in the registered Percheron stallion named Artrust 44087," and it is claimed by appellees that Zoellner who had assisted Woods in making the sale received a present from him of eleven shares of said stock. The horse was kept by Zoellner for sometime, when as it proved to be a poor breeder and as debts had accumulated for his keeping, he was sold for a feed bill and taken away. On March 26, 1903, appellees caused a notice to be published in "The Citizen" a daily and weekly newspaper printed, published and circulated in Alexander county, Illinois, as follows: "To whom it may concern. All persons are hereby warned against purchasing or in any wise dealing in three (3) certain notes of $833.33 each dated March 10, 1903, payable to Telling & Whitehead Co., which notes may bear our names." This notice was published in eight issues of the daily and two of the weekly paper. The note not being paid when due, suit was brought by appellant on one of the notes, of which it was the assignee, and an ordinary declaration in *assumpsit* filed.

The defenses to the note made by appellees and raised by suitable pleas, were, first, that the note was made payable to a corporation when in fact the proof showed there was no such corporation in existence and the note was therefore void; second, that neither appellant nor the first indorsee was a *bona fide* purchaser of the

note for value before maturity, and third, that there was a failure of consideration.

The first defense is based on the fact that the note was made payable to The Telling & Whitehead Co. and was indorsed by the payee under that name, and that Woods, the agent of Telling & Whitehead, had distributed cards bearing the name of the Telling & Whitehead Co.

Appellees base their theory as to this question upon the fact that section 220 of our Criminal Code, provides that "if any company, association or person, puts forth any sign or advertisement and therein assumes for the purpose of soliciting business, a corporate name" such company, association or person shall be subject to a fine; and they argue that appellant had violated the Criminal Code and therefore the promissory note obtained in consequence thereof was null and void. We think that question has been fully disposed of by the decisions of the courts of appellate jurisdiction in our state.

In Edgerton v. Preston, 15 Ill. App. 23, it is said: "but it is claimed that appellants were doing business under an assumed corporate name, without being incorporated in violation of section 220 of the Criminal Code. What the statute denounces is not merely the assuming of a corporate name, but the putting forth a sign or advertisement, and therein assuming a corporate name for a particular purpose, namely, for the purpose of soliciting business. The mere assumption of a name appropriate for a corporation would be no violation of the statute; nor would the putting forth of a sign or advertisement in which a corporate name is assumed, if not done for the purpose of soliciting business, constitute such violation. What the legislature had in view in enacting this section of the Criminal Code manifestly was to prevent persons from obtaining a fictitious credit by advertising themselves as being a corporation when they were not incorporated."

In People v. Rose, 219 Ill. 46, where the effect of the same section of the criminal statute was under consideration, it is said: "It is furthermore to be observed that this criminal statute does not make contracts made by persons guilty of the offense prohibited, invalid, but merely provides that such persons shall be liable to pay a certain fine. It would appear therefore that a violation of the statute can be attended with no other consequences than merely the infliction of the penalty therein prescribed."

We are therefore of opinion that even if the name in question was intended to represent a corporate name, that fact would not render the note upon which this suit is brought, invalid.

It was clearly shown by the proof introduced by appellant that it purchased the note in question before maturity, of the bank of Broadlands, paying therefor $755.87, which was the full amount of the balance due for principal and interest; that neither the president, cashier nor discount committee of appellant, saw the notice published by appellees in the Cairo paper and that its cashier made inquiry concerning the note of the First State Bank of Thebes, Illinois, where it was payable. To meet this evidence appellees relied upon circumstances only, the principal ones being that they published the notice above referred to in the Cairo paper and the fact that the note was indorsed both by the payee and the first indorsee, without recourse. The publisher of the newspaper, which published the notice introduced in evidence, sworn that it circulated throughout the county where it was published, which, the court will take judicial knowledge, is many miles from the county in which Litchfield is located, and no proof was made that the paper had any circulation outside of its own county. There was absolutely no positive evidence that appellant knew of any claimed defense to the note and the meager circumstances relied on by appellees, were wholly insufficient to overcome the direct and positive proof offered by appel-

lant, showing that it had no such notice. Under these circumstances, the question of a failure of consideration, sought to be raised by appellees, was of no avail and offered no defense. It is elementary that the defense of want of consideration cannot be set up against an innocent purchaser for value before maturity.

Where a person takes an assignment of a promissory note before due in good faith, for a valuable consideration, even though he may be guilty of gross negligence, he will hold it by a title valid against the world, it will not in his hands be subject to a defense of failure of consideration. Shreeves v. Allen, 79 Ill. 553; Comstock v. Hannah, 76 Ill. 530; Matson v. Alley, 141 Ill. 284.

The evidence so greatly preponderated in favor of appellant in its claim that it was an innocent purchaser for value before maturity of the note in question, that we cannot think the verdict represents the unprejudiced and well-considered opinion of the jury upon that subject, and to let it stand would be manifest injustice to appellant.

The judgment of the court below will therefore be reversed and the cause remanded.

*Reversed and remanded.*